USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Sept. 26, 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
VITO F. CARDINALE, NICK PONZIO,       :
CARDINALE 363 4TH AVENUE              :
ASSOCIATES, LLC, and PONZIO 363       :
4TH AVENUE ASSOCIATES, LLC,           :
individually and as members of        :
267 SIXTH STREET LLC,                 :       No. 13 Civ. 4845 (JFK)
                                      :
                    Petitioners,      :       **OPINION & ORDER**
                                      :
     -against-                        :
                                      :
267 SIXTH STREET LLC, 363             :
DEVELOPERS LLC, NOREAST               :
DEVELOPMENT CORP., ISAAC KATAN        :
a/k/a ITZHAK KATAN, RONALD FATATO,    :
DOMINICK J. TONACCHIO, SCOTT          :
ROTHSTEIN, D&S MANAGEMENT             :
INVESTMENT, LLC, D&D MANAGEMENT       :
AND INVESTMENT, LLC, T & L            :
INVESTORS CORP., TONA DEVELOPMENT     :
AND CONSTRUCTION LLC, D&S             :
DEVELOPERS GROUP, LLC, and            :
JOHN DOE #1 TO JOHN DOE #10,          :
                                      :
                    Respondents.      :
                                      :
------------------------------------X

APPEARANCES

     For Petitioners:
          RICHARD S. BONFIGLIO

     For Respondents:
          MILLER LAW OFFICES, PLLC
          By:  Jeffrey H. Miller
               Scott J. Farrell

          SPATA & ASSOCIATES P.C.
          By:  Vincent F. Spata

**JOHN F. KEENAN, United States District Judge:**

     Before the Court are cross-motions to vacate, modify, or

confirm the arbitration award of Martin S. Tackel ("Arbitrator")

dated February 5, 2013 ("Arbitration Award" or "Award").
Petitioners Vito F. Cardinale; Nick Ponzio; Cardinale 363 4th
Avenue Associates, LLC; and Ponzio 363 4th Avenue Associates,
LLC (collectively, "Petitioners") have moved to vacate or modify
the Arbitration Award.  Respondents 267 Sixth Street LLC; 363
Developers LLC; Noreast Development Corp; Isaac Katan a/k/a
Itzhak Katan; and Ronaldo Fatato (collectively, "267 Sixth
Street Respondents"); and Domenick Tonacchio; D&S Management and
Investment, LLC; D&D Management and Investment, LLC; T&L
Investors Corp.; Tona Development and Construction, LLC; and D&S
Developers Group, LLC (collectively, "Tonacchio Respondents")
oppose that motion and cross-move to confirm the Award.  For the
reasons that follow, the Court grants Respondents' motion to
confirm the Award and denies Petitioners' motion to vacate or
modify the Award.

## I. Background

### A. The Parties and Their Operating Agreement

Petitioners Cardinale and Ponzio entered into an Operating
Agreement with Respondent Katan, in his capacity as president of
Respondent Noreast Development Corp., on February 13, 2008 to
form Respondent 267 Sixth Street LLC. (Arb. Record 221-49.)  On
February 20, 2008, Cardinale formed Petitioner Cardinale 363 4th
Avenue Associates, LLC, and Ponzio formed Petitioner Ponzio 363
4th Avenue Associates, LLC. (Arb. Record 330-40.)  On September

15, 2008, Respondent 363 Developers LLC replaced Noreast
Development Corp. as a member. (Arb. Record 525-29.)   On
December 1, 2008, Respondents Fatato, Tonacchio, and Rothstein
were admitted as members of 267 Sixth Street LLC. (Arb. Record
559-62.)   Tonacchio managed Respondent D&S Developers Group,
LLC. (Arb. Record 583-90.)

There are several provisions of the Operating Agreement
that touch upon distribution of assets, which are relevant to
the Arbitration Award.  Section 15 of the Operating Agreement
provides:  "The Company's profits and losses shall be allocated
to the Members as provided in Schedule C hereto."  In turn,
section 1.1 of Schedule C defines "Capital Account" as "the
account established and maintained for the Member on the books
of the Company in compliance with Treasury Regulation §§ 1.704-
1(b)(2)(iv) and 1.704.2, as amended."  It goes on to say that
section 1.1 "shall be interpreted and applied in a manner
consistent with such Treasury Regulations."  Section 16 of the
Operating Agreement sets forth:

> Distributions shall be made to the Members at the
> times and in the aggregate amounts determined by
> the Manager, to the extent permitted by the Loan
> Documents as long as any Obligation remains
> outstanding.  Notwithstanding any provision to the
> contrary contained in this Agreement, the Company
> shall not be required to make a distribution to the
> Members on account of its interest in the Company
> if such distribution would violate the Act or any
> other applicable law or any Basic Document.

Section 24(d) states:

> In the event of dissolution, the Company shall
> conduct only such activities as are necessary to
> wind up its affairs (including the sale of the
> assets of the Company in an orderly manner), and
> the assets of the Company shall be applied in the
> manner, and in the order of priority, set forth in
> Section 704 of the [N.Y. Limited Liability Company
> Law].

There is no arbitration clause in the Operating Agreement.

### B. Prior Litigation and the Arbitration Award

The Arbitration Award here arises out of an earlier action before Judge Jack B. Weinstein in the Eastern District of New York ("Eastern District Action"). There, Petitioners alleged, inter alia, that the 267 Sixth Street Respondents and the Tonacchio Respondents breached the Operating Agreement and committed securities fraud and RICO violations. To resolve the Eastern District Action, all parties entered into a Settlement Stipulation, which provided for the creation of a "Disputed Fund" upon the closing of a contract for sale of the premises at 267 Sixth Street in Brooklyn. (Arb. Record 1177–89.) Pursuant to the Settlement Stipulation, once the contract for sale became firm, Petitioners were to dismiss the Eastern District Action with prejudice and the parties agreed to an interim distribution of the net proceeds from the sale. The parties would then arbitrate (1) Petitioners' breach of the Operating Agreement claims; (2) any counter or cross-claims; (3) the distribution of

the Disputed Fund; and (4) re-allocation of the interim
distributions.  The parties' recovery was limited to the amount
of the Disputed Fund. (Arb. Record 1185.)  The Settlement
Stipulation also contained provisions for the Eastern District
of New York to retain jurisdiction in the event that (a) the
purchaser (a third party) canceled the contract of sale; or (b)
there was a breach of the Settlement Stipulation. (Arb. Record
1186.) Judge Weinstein "so ordered" the Settlement Stipulation
and terminated the case.

During the arbitration, the parties disagreed about how the
proceeds of the sale should be distributed.  Respondents and
their expert argued that the proceeds should be distributed in
proportion to the ownership percentages of each member in accord
with New York law. (Arb. Record 58; 1637-39; 2066-70; 2095-97.)
Both sides stipulated to the membership interests and capital
contributions made by the parties. (Arb. Record 1963-64.)

Petitioners originally argued in their statement of claim
that distributions should be made on the "first-in, first-out
basis . . . required by the provisions of the Operating
Agreement and the New York Limited Liability Company Law which
governs same." (Arb. Record 34.)  Petitioners' expert later took
the position that Schedule C of the Operating Agreement
"requires adjustment of members capital accounts in conformity
with the provisions of Treasury Regulation §§ 1.704-1(b)(2)(iv)

and 1.704-2 as amended, the former of which require certain
allocations of gain and loss to have 'substantial economic
effect' which, in accounting parlance, would require adjustments
to the capital accounts of the existing members to reflect their
fair market value at the time of admission of new members."
(Arb. Record 1715.)  Petitioners' expert also set forth several
distribution scenarios.  The scenarios provided two broad
hypotheses.  The first hypothesis assumes that 26 C.F.R. §
1.704-1(b)(2)(iv) applies. (Arb. Record 1723-28.)  The second is
a straight application of N.Y. Limited Liability Law § 704.
(Arb. Record 1728-38.)  Both hypotheses have what Petitioners
term best case, worst case, and intermediary scenarios.

    Although Petitioners' statement of claim did not mention
either Schedule C or the Treasury Regulations, Petitioners'
post-hearing brief adopted their expert's argument. (Arb. Record
2030-38.)  Petitioners took the position that distribution
should be determined by "regular cannons of construction to the
provisions, if any, of the Operating Agreement, under the
applicable provisions of the [New York Limited Liability Company
Law]" as modified by the Treasury Regulations that Schedule C of
the Operating Agreement "expressly incorporates."(Arb. Record
2030-31.)  Although there were several amendments to the
Operating Agreement, Petitioners maintained that "none of the
amendments altered Schedule C." (Arb. Record 2031.)

Additionally, Petitioners noted their experts' distribution scenarios.  They also argued that "the Arbitrator, sitting as the arbiter of law, is free to adopt [their expert's] approach, as being both equitable and in conformity with the applicable statutes, as there is clearly no binding decisional law precisely on point." (Arb. Rec. 2035-36.)

The Arbitrator issued his Award on February 5, 2013.  As relevant here, he found that Petitioners failed to establish a breach of the Operating Agreement and had not demonstrated that the Disputed Fund should be distributed in a way "other than pro rata in proportion to the members' respective actual contributions to the capital of the company" as set forth in the parties' stipulation regarding membership interests and capital contributions. (Arb. Record 2112.)  He then found that Respondents had shown that a pro rata distribution was appropriate. (Id.)  Although such a distribution would have required further disgorgement, the Arbitrator capped the distribution at the amount of the Disputed Fund, as required by the Settlement Stipulation. (Arb. Record 2113.)

After the Arbitrator rendered his Award, Petitioners timely moved for vacatur or modification of the Award in the Eastern District, before Judge Weinstein.  The 267 Sixth Street Respondents opposed Petitioners' motion and cross-moved to confirm the Award.  The Tonacchio Respondents opposed the motion

to vacate or modify for the same reasons as the 267 Sixth Street Respondents, but did not cross-move for confirmation of the Award.  Judge Weinstein transferred the action to this Court after he determined that the petition to vacate was brought in the wrong venue under § 10 of the Federal Arbitration Act ("FAA").

Upon this Court's request, the parties rebriefed their motions.  Petitioners' underlying claim is that the Award should be vacated or modified because the Arbitrator incorrectly applied the parties' original Operating Agreement, which Petitioners allege incorporated Treasury Regulations §§ 1.704-1(b)(2)(iv) and 1.704-2, which the Arbitrator ignored. Petitioners' moving papers assert that the failure to apply the Treasury Regulations caused the Arbitrator to improperly allocate $464,866.55 to the Respondents that should have gone to the Petitioners.  Respondents argue that Petitioners fall short of the high bar set to vacate an arbitration award, and that confirmation of the Award is instead appropriate.[1]

---

[1] Although the Tonacchio Respondents did not refile their motion, they did file an Affirmation in Opposition to Petitioners' Motion and in Support of Cross Motion, where they incorporate the 267 Sixth Street Respondents' arguments opposing vacatur or modification and in support of confirmation of the Award. (ECF No. 70.)

## II. Discussion

Petitioners claim federal question jurisdiction under 26 U.S.C. § 704, which is part of the Internal Revenue Code and sets forth how to determine a partner's distributive share. See § 704. The Court has subject matter jurisdiction because the main thrust of Petitioner's argument for vacatur is that the Arbitrator manifestly disregarded certain Treasury Regulations and the Internal Revenue Code. See Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 27 (2d Cir. 2000) (holding that subject matter jurisdiction is present where "petitioner complains principally and in good faith that the award was rendered in manifest disregard of federal law"). This Court maintains jurisdiction even if it later concludes that the Arbitrator did not manifestly disregard federal law. See id. at 29.

Both parties ask the Court to apply New York law in its review of the Award since the Settlement Stipulation providing for arbitration does not affect interstate commerce. (Pl. Mem. 9; Def. Mem. 19.) However, Judge Weinstein's order transferring the case to the Southern District was made pursuant to 9 U.S.C. § 10, indicating that the FAA may apply. In the interest of completeness, and because it does not affect the outcome, the Court will examine all the potential grounds for vacatur raised by Petitioners, including those under the FAA. Since Petitioners' chief argument for vacatur is the Arbitrator's

9

alleged manifest disregard of federal law, the Court turns to that argument first.

## A. Vacatur

### 1. Manifest Disregard of Federal Law

The crux of Plaintffs' argument is that the Arbitrator manifestly disregarded federal law by ignoring certain Treasury Regulations referenced in the Operating Agreement.  Although the Supreme Court's decision in Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 584 (2008), cast some doubt on the continued viability of the "manifest disregard of the law" standard, the Second Circuit continues to recognize it as an appropriate ground for vacatur. See Schwartz v. Merrill Lynch & Co., 665 F.3d 444, 451 (2d Cir. 2011); see also TiVo Inc. v. Goldwasser, 560 F. App'x 15, 17–18 (2d Cir. 2014).  However, the party seeking vacatur bears a "heavy buren." GMS Grp., LLC v. Benderson, 326 F.3d 75, 81 (2d Cir. 2003).  Indeed, review for manifest disregard of the law is "severely limited." Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004).  Vacatur under this standard requires "more than error or misunderstanding with respect to the law." T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010) (internal quotation marks omitted).  Rather, there are three prongs that must be established:  (1) the law allegedly disregarded must have been clear and "explicitly applicable"; and the arbitrator must have

(2) "improperly applied" the law, "leading to an erroneous
outcome" with (3) subjective knowledge of the law and its
applicability. Id.  Even if a court disagrees with an award on
the merits, the court should reject vacatur "if there is a
barely colorable justification for the outcome reached." Id.

Petitioners' cannot carry their burden to show that the
Treasury Regulations were "explicitly applicable."  Petitioners
do not contend that the Treasury Regulations have independent
effect outside the confines of the parties' Operating Agreement.
Rather, as recognized by Petitioners, the Treasury Regulations
only arguably apply because they were "adopted by the parties in
their Operating Agreement." (Reply 2.)  Indeed, Petitioners
frame their arguments around the idea that the Arbitrator
"utterly ignored a provision embedded by the Parties in their
Operating Agreement." (Reply 1.)  They claim that the Arbitrator
could not rely solely on N.Y. Limited Liability Company Law
because, by its own terms, the law only applies "[i]f the
operating agreement does not so provide." (Reply 4.)  Thus,
according to Petitioners, it is the Operating Agreement, not the
Treasury Regulations themselves, that provides for distribution
according to the Treasury Regulations.  The Treasury Regulations
are not "explicitly applicable" because, as Petitioners appear
to recognize, their applicability hinges on the Arbitrator's
interpretation of the Operating Agreement.  Petitioners also

implicitly conceded this point during arbitration when they argued the continued applicability of Schedule C despite several amendments to the Operating Agreement. (Arb. Record 2031.)  Of course, if the Treasury Regulations had any independent effect, amendments of the Operating Agreement would not matter.

Since the Arbitrator's interpretation of the Operating Agreement was a predicate determination to the applicability of the Treasury Regulations, it cannot be said that the Arbitrator manifestly disregarded the Treasury Regulations. See T.Co Metals, 592 F.3d at 339 ("With respect to contract interpretation, [the "manifest disregard of the law" standard] essentially bars review of whether an arbitrator misconstrued a contract."); see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 390 (2d Cir. 2003) ("An arbitrator obviously cannot be said to disregard a law that is unclear or not clearly applicable.")  For similar reasons, it cannot be said that the Arbitrator improperly applied the Treasury Regulations or that he had subjective knowledge of their applicability.  The regulations could only be "improperly applied" if they were applicable in the first place, which required the Arbitrator to first interpret the Operating Agreement.  Moreover, Petitioners cannot show subjective knowledge because they argued during the arbitration that the Arbitrator was "free to adopt [their expert's] approach, as

being both equitable and in conformity with the applicable statutes, as there is <u>clearly no binding decisional law precisely on point</u>." (Arb. Record 2035-36 (emphasis added).) Therefore, the "manifest disregard of law" is not an appropriate basis for vacatur.

## 2. Arbitrator Exceeding His Power

In addition to their argument that the Arbitrator manifestly disregarded federal law, Petitioners also argue that the Arbitrator exceeded his power within the meaning of N.Y. C.P.L.R. § 7511(b)(1)(iii). New York has a "long and strong public policy favoring arbitration." <u>Stark v. Molod Spitz DeSantis & Stark, P.C.</u>, 9 N.Y.3d 59, 66 (2007) (internal quotation marks omitted). This is especially so when, as here, the arbitration arises out of a settlement agreement. <u>See</u> <u>State v. Philip Morris Inc.</u>, 8 N.Y.3d 574, 581 (2007) (noting that the arbitration clause was contained in settlement agreement and that "it is the nature of a settlement to eliminate unpredictable litigation").

Nevertheless, section 7511(b)(1)(iii) allows for vacatur of an arbitration award where a party is prejudiced by an arbitrator who "exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made." N.Y. C.P.L.R. § 7511(b)(1)(iii). An arbitrator exceeds his power within the meaning of §

7511(b)(1)(iii) when: "(1) the arbitrator has exceeded a specifically enumerated limitation on his authority; (2) the decision is totally irrational; or (3) the award violates a strong public policy." Advanced Aerofoil Techs., AG v. Todaro, No. 13 Civ. 7181, 2014 WL 1512118, at *4 (S.D.N.Y. Apr. 16, 2014); see also In re N.Y.C. Transit Auth. v. Transp. Workers' Union of Am., Local 100, 6 N.Y.3d 332, 336 (2005).

Although not clear from Petitioners' moving papers, Petitioner also appears to argue that the Arbitrator exceeded his power under the FAA. The analogous FAA provision permits vacatur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." § 10. However, the FAA does not provide for vacatur just because an award is irrational or violates a strong public policy. See Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 139 (2d Cir. 2007).

**a. Exceed Specifically Enumerated Limitation on Authority**

Petitioners argue that vacatur is appropriate because the Arbitrator exceeded his authority by disregarding the application of the Treasury Regulations as they pertained to the distribution of the Disputed Fund thereby "re-writing the agreement between the parties." First, Petitioners take issue with the fact that the Award does not reference Schedule C of

14

the Operating Agreement or the Treasury Regulations incorporated therein, opting instead to allocate the proceeds pro rata based on each member's capital contributions.  Second, as the flipside of this argument, Petitioners also assert that the Arbitrator was obligated to apply the Treasury Regulations as to give the partnership transactions "substantial economic effect" because the Arbitrator found that "membership, actual and proposed capital contributions and commitments, loans, and membership interest percentages in the Company varied and shifted." (Mem. 14.)  Although not framed this way by Petitioners, it appears as though their argument is that the Arbitrator exceeded a specifically enumerated limitation on his authority.

"It is well established that an arbitrator has broad discretion to determine a dispute and fix a remedy and that any contractual limitation on that discretion must be contained, either explicitly or incorporated by reference, in the arbitration clause itself." Comm'cn Workers of Am., Local 1170 v. Town of Greece, 926 N.Y.S.2d 232, 234 (4th Dep't 2011) (alteration and internal quotation marks omitted); see also Bd. of Educ. v. Dover-Wingdale Teachers' Ass'n, 61 N.Y.2d 913, 915 (1984).  New York law affords broad deference to an arbitrator's award and will not disturb it "even if the arbitrator misapplied the substantive law in the area of the contract." In re N.Y.C. Transit Auth., 6 N.Y.3d at 336.  A court's review is "even more

15

restricted when the arbitrator's interpretation of the agreement resolves the question submitted, and not merely one aspect of the dispute." Rochester City Sch. Dist. v. Rochester Teachers Ass'n, 41 N.Y.2d 578, 582 (1977); accord In re Monroe Cnty., 670 N.Y.S.2d 276, 277 (4th Dep't 1998).

There are at least two problems with Petitioners' argument. First, the Operating Agreement did not contain an arbitration clause, and the parties agreed in their Settlement Stipulation "to determine the disposition of the Disputed Funds by arbitrating" Petitioners' breach of the Operating Agreement claims as well as any counter- or cross-claims raised by Respondents. (Arb. Record 1185.)  Notably, this broad arbitration clause does not confine disbursement of the funds to the terms of the Operating Agreement or the Treasury Regulations.  Indeed, the Treasury Regulations are not mentioned in the Settlement Stipulation at all, and the Operating Agreement is only referenced obliquely in that the "breach of operating agreement claims" would be settled by arbitration. (Arb. Record 1185.)  Thus, the Arbitrator did not exceed his authority because there was no explicit limitation placed on him by the Settlement Stipulation.

Second, Petitioners have likely waived this argument because they never previously challenged the Arbitrator's authority to decide distributions in the manner that he did. See

16

Silverman v. Benmor Coats, Inc., 61 N.Y.2d 299, 309 (1984)
("Generally the contention that a claim proposed to be submitted
to arbitration is in excess of the arbitrator's power is waived
unless raised by an application for a stay."); Allstate Ins. Co.
v. N.Y. Petroleum Ass'n Comp. Trust, 961 N.Y.S.2d 218, 219 (2d
Dep't 2013).  Rather than challenge his authority, Petitioners
explicitly acknowledged that the Arbitrator "must still
determine the terms under which the distribution of the net
proceeds of liquidation of the [company] will be made; and, by
the effect of the stipulations between the parties, in what
amounts.  This is a matter of construction, determined by the
Arbitrator sitting as the arbiter of law." (Arb. Rec. 2030.)
Petitioners and their expert even provided different
disbursement scenarios in the event that the Arbitrator found
that the Treasury Regulations did not apply.  Thus, not only did
Petitioners fail to challenge the Arbitrator's authority, they
expressly recognized his authority to fashion the Award in the
manner that he did.  Therefore, the Court finds that the
Arbitrator did not exceed a specifically enumerated limitation
on his power within the meaning of N.Y. C.P.L.R. § 7511.  To the
extent that Petitioners claim that the Arbitrator exceeded his
authority within the meaning of the § 10(a)(4) of the FAA, that
argument is rejected for the same reasons discussed above. See
Seed Holdings, Inc. v. Jiffy Int'l AS, --- F. Supp. 2d ----,

2014 WL 1141717, at *10 n.8 (S.D.N.Y. 2014) (noting that, when a party argues that the arbitrator exceeded the scope of his authority, N.Y. C.P.L.R. § 7511(b)(1)(iii) and FAA § 10(a)(4) are "identical" in substance).

### b. Totally Irrational

Petitioners next argue that the Arbitrator exceeded his power by crafting a totally irrational award.  They claim that the Award is irrational because it is inequitable and essentially rewrote the parties' Operating Agreement by disregarding Schedule C.  According to Petitioners, the Arbitrator made findings that required him to apply the Treasury Regulations incorporated in Schedule C.

"An award is irrational if there is no proof whatever to justify the award or the award gave a completely irrational construction to the provisions in dispute and, in effect, made a new contract for the parties." In re Rockland Cnty. Bd. of Coop. Educ. Servs. v. BOCES Staff Ass'n, 308 A.D.2d 452, 453 (2d Dep't 2003) (citations and internal quotation marks omitted).  There is nothing irrational about this Arbitration Award.  While Petitioners disagree with the Arbitrator's interpretation of the Operating Agreement, his interpretation was not the sort that was categorically barred by the Operating Agreement such that it made a new contract for the parties. See In re Professional, Clerical, Technical, Emps. Ass'n, 959 N.Y.S.2d 310, 312 (4th

Dep't 2013) ("The mere fact that a different construction could have been accorded the provisions concerned and a different conclusion reached does not mean that the arbitrator so misread those provisions as to empower a court to set aside the award." (alteration and internal quotation marks omitted)).  As Petitioners acknowledged in their post-hearing brief, there were several provisions of the Operating Agreement that arguably concerned distributions.  One of those provisions, section 16, specifically dealt with distributions and did not mention Schedule C or the Treasury Regulations, instead referring generally to the N.Y. Limited Liability Company Law.  Another provision, section 24(d), concerned dissolution and provided for the company's assets to be applied in accordance with N.Y. Limited Liability Company Law § 704.  The provision incorporating Schedule C, Section 15, dealt only with allocation of profits and losses.

Whether or not it was the right interpretation, it was nonetheless reasonable for the Arbitrator to focus on, for example, section 24(d) of the Operating Agreement.  Both sides agreed that N.Y. Limited Liability Law § 704, which deals with distribution of assets upon dissolution, applied.  Section 704 is expressly incorporated in section 24(d) of the Operating Agreement and provides, by reference to section 504 of the N.Y. Limited Liability Law, that "distributions shall be allocated on

the basis of the value . . . of the contributions of each
member." § 704; see also § 504.  Although Petitioners argued
that the Arbitrator needed to also take into account the
Treasury Regulations, which were only referenced in the
provision dealing with profits and losses, it was not
unreasonable for the Arbitrator to conclude, especially given
his broad distribution authority under the Settlement
Stipulation, that the Operating Agreement did not require
adjustments according to the Treasury Regulations when making
distributions according to section 24(d). See Shenendehowa Cent.
Sch. Dist. Bd. of Educ. v. Civil Serv. Emps. Ass'n, Inc., 934
N.Y.S.2d 540, 541 (3d Dep't 2011) ("Where an agreement is
reasonably susceptible of the construction given it by the
arbitrator, a court may not vacate the award." (alteration and
internal quotation marks omitted)); see also Fitzgerald v.
Fahnestock & Co., 850 N.Y.S.2d 452, 454 (1st Dep't 2008) ("An
arbitrator may do justice as he sees it, applying his own sense
of law and equity to the facts as he finds them to be and making
an award reflecting the spirit rather than the letter of the
agreement." (internal quotation marks omitted)).  Petitioners'
argument fairs no better under the FAA because the Second
Circuit does not allow vacatur of an award simply because it is
"irrational." See Porzig, 497 F.3d at 139.

20

### c. Violates Strong Public Policy.

Finally, Petitioners assert that the Award violates two strong public polices:  compliance with tax laws and enforcement of contracts as written.  The public policy exception is "extremely narrow." N.Y. Racing Ass'n, Inc. v. Local Union No. 3, 74 A.D.3d 975, 975 (2d Dep't 2010).  It only applies when "public policy considerations, embodied in statute or decisional law, prohibit, in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator." City Sch. Dist. v. McGraham, 17 N.Y.3d 917, 919 (2011) (internal quotation marks omitted).  Such a violation must be evident on the face of the award without "extended factfinding or legal analysis." In re N.Y.C. Transit Auth. v. Transp. Workers' Union of Am., Local 100, 99 N.Y.2d 1, 7 (2002) (internal quotation marks omitted).

At the outset, it is worth noting that Petitioners do not cite a single New York case that suggests either compliance with tax laws and enforcement of contracts as written are public policies that New York recognizes as trumping the finality of an arbitration award.  Enforcement of contracts as written cannot be a strong public policy because New York courts uphold arbitration awards that arguably misconstrue contract provisions. See In re United Fed'n of Teachers, Local 2 v. Bd. of Educ., 1 N.Y.3d 72, 82–83 (2003); Rochester City Sch. Dist.,

41 N.Y.2d at 582 ("[C]ourts may not set aside an award because they feel that the arbitrator's interpretation disregards the apparent, or even the plain, meaning of the words or resulted from a misapplication of settled legal principles.").  This Court need not address whether New York would recognize compliance with tax laws as a strong public policy because, as discussed earlier, the Treasury Regulations were incorporated by reference and do not independently require the distribution that Petitioners seek.  The Court notes, however, that during the arbitration Petitioners and their expert recognized the possibility that the Arbitrator might find that the Operating Agreement did not require the Treasury Regulation adjustments they sought.  Petitioners and their expert even set forth how proposed distributions should be made solely under New York law, without accounting for the Treasury Regulations.  Thus, Petitioners recognized, as the Court does now, that the Treasury Regulations themselves did not absolutely prohibit the distributions provided by the Arbitrator.

The Second Circuit does not recognize violation of a strong public policy as a ground for vacatur under the FAA.  See Porzig, 497 F.3d at 139.  Since Petitioners have failed to satisfy the high burden for vacating the Arbitration Award, the Court denies Petitioners motion to vacate.

**B. Modification**

In the alternative, Petitioners seek modification of the Award based on a "miscalculation of figures."  Under N.Y. C.P.L.R. § 7511(c), a court "shall" modify an award that contains a "miscalculation of figures."  Under the FAA, a court "may" modify an award containing an "evident material miscalculation of figures." 9 U.S.C. § 11(a).  Review under § 11 is "generally limited to patently obvious mistakes on the face of the award." Fellus v. Sterne, Agee & Leach, Inc., 783 F. Supp. 2d 612, 619 (S.D.N.Y. 2011).  The same is true under N.Y. C.P.L.R. § 7511(c). Hough v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 757 F. Supp. 283, 287–89 (S.D.N.Y. 1991); see also Avamer Assocs., L.P. v. 57 Assocs., L.P., 890 N.Y.S.2d 2, 3 (1st Dep't 2009) (citing Hough with approval).

The Court discerns no miscalculation of figures, material or otherwise.  Petitioners do not point to a clear mathematical or clerical error of the sort warranting modification. Cf. Laurin Tankers Am., Inc. v. Stolt Tankers, Inc., 36 F. Supp. 2d 645, 651 (S.D.N.Y. 1999) (remanding an award to arbitrators for modification pursuant to FAA § 11(a) where arbitrators acknowledged "computational error").  Instead, Petitioners argue that adjustments should have been made in accordance with the Treasury Regulations, which, of course, assumes that the Treasury Regulations apply.  Thus, this modification argument is

23

essentially the same as Petitioners' already-rejected arguments
for vacatur.  As such, Petitioners are actually seeking
modification on substantive grounds, which is not an appropriate
basis for modification under either the federal or state
statutes. See Fellus, 783 F. Supp. 2d at 619 ("Section 11(a)
does not permit modification where the award is not the result
of some careless or obvious mathematical mistake, but rather the
disposition of a substantive dispute that lays at the heart of
the arbitration." (internal quotation marks omitted)); In re
Ververs & Schueller Co., 593 N.Y.S.2d 701, 701-02 (4th Dep't
1993) ("Respondents, however, were challenging the figures the
arbitrator chose to use in the exercise of his judgment, not his
computation.  Thus, respondents were not entitled to
modification pursuant to CPLR 7511(c)(1).")  The Court therefore
denies Petitioners' motion for modification of the Arbitration
Award.

### C. Confirmation

Under both the FAA and the N.Y. C.P.L.R., a court must
confirm an award upon timely motion unless it is vacated,
modified, or corrected. See Hall Street, 552 U.S. at 582 (FAA);
Blumenkopf v. Proskauer Rose LLP, 943 N.Y.S.2d 885, 886 (1st
Dep't 2012) (N.Y. C.P.L.R.).  Having rejected Petitioners'
arguments concerning vacatur and modification, the Court grants
Respondents motion to confirm the Arbitration Award.

### III. Conclusion

For the foregoing reasons, Petitioners' motion to vacate or modify the Award is denied, and Respondents' motion to confirm the Award is granted.

**SO ORDERED.**

Dated:    New York, New York
          September 26, 2014

JOHN F. KEENAN
United States District Judge